**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

RICK LARRY CORTESE JR.,

Plaintiff,

v.

FRANK BISIGNANO,[1]

Defendant.

CIVIL ACTION NO. 4:24-CV-01830

(MEHALCHICK, J.)

**MEMORANDUM**

Presently before the Court is a January 27, 2026, report and recommendation filed by Magistrate Judge Martin C. Carlson recommending that the decision of the Commissioner of Social Security, (hereinafter, "the Commissioner") denying Plaintiff Rick Larry Cortese Jr's ("Cortese") claims for disability insurance benefits ("DIB") under Title II of the Social Security Act be affirmed. (Doc. 17). On February 7, 2026, Cortese filed a timely objection to the report. (Doc. 18). Based on the Court's review of the relevant filings along with the report, Cortese's objection is overruled, and the report will be adopted in its entirety.

**I. LEGAL STANDARD**

"A district court may 'designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition' of certain matters pending before the court." *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) (quoting 28 U.S.C. § 636(b)(1)(B)). Within fourteen

---

[1] The Court agrees with Judge Carlson's finding that the previous Commissioner of Social Security, Martin O'Malley, should be substituted with the current Commissioner of Social Security, Frank Bisignano. (Doc. 17, at 1 n.2); *see Kentucky v. Graham*, 473 U.S. 159, 166 n.11 (1985) (stating "[i]n an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office")

days of being served a report and recommendation, "any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C. § 636(b)(1). When a party timely files objections, the district court is to conduct a *de novo* review of the challenged portions of the Magistrate Judge's findings unless the objection is "not timely or not specific." *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir.1984); 28 U.S.C. § 636(b)(1). The Court may then "accept, reject, or modify, in whole or in part, the findings and recommendations." 28 U.S.C. § 636(b)(1). "Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper." *Rahman v. Gartley*, No. CV 3:23-363, 2024 WL 555894, at *1 (M.D. Pa. Feb. 12, 2024) (citing *United v. Raddatz*, 447 U.S. 667, 676 (1980)).

## II. DISCUSSION

Cortese applied for DIB on April 24, 2022, alleging that he suffered from a disability beginning September 18, 2021, due to the combined effects of various conditions. (Doc. 8-2, at 11-14; Doc. 17, at 6). Cortese did not work between September 18, 2021, through September 30, 2022. (Doc. 8-2, at 13). Cortese was twenty-eight years old at the time of the alleged onset of his disability, has a high school education, and previously worked as an electronics technician. (Doc. 8-2, at 25; Doc. 17, at 6).

On November 9, 2023, an administrative law judge (the "ALJ") held a hearing on Cortese's claim for DIB. (Doc. 8-2, at 11). At the hearing the ALJ applied the five-step process used to determine whether a claimant is entitled to DIB. (Doc. 8-2, at 12); *see* 20 C.F.R. § 404.1520(a)(4) (providing the five-step process). At step one, the ALJ must determine whether a claimant is engaged in substantial gainful activity, and if they are, they are not considered

disabled. (Doc. 8-2, at 12); *see* 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ must determine whether the claimant has a severe impairment with sufficient duration, and if they do not, they are not considered disabled. (Doc. 8-2, at 12); *see* 20 C.F.R. § 404.1520(a)(4)(ii). The third step requires the ALJ to determine if the claimant suffers from a medical impairment sufficiently severe in terms of duration, effect on basic work activities, and based on criteria listed at 20 C.F.R. § 404.1520(d). (Doc. 8-2, at 12-13); *see* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's disability is not sufficiently severe, they are not considered disabled. (Doc. 8-2, at 12-13); *see* 20 C.F.R. § 404.1520(a)(iii). At step four, the ALJ must assess the claimant's residual functional capacity and their past relevant work. (Doc. 8-2, at 13); *see* 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can continue to do their past work, they are not considered disabled. (Doc. 8-2, at 13); *see* 20 C.F.R. § 404.1520(a)(4)(iv). In the fifth and final step, the ALJ must consider the claimant's residual functional capacity and age, education, and work experience to determine if the claimant can adjust to other work. (Doc. 8-2, at 13); *see* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can transition to other work, they are not considered disabled. (Doc. 8-2, at 13); *see* 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ found that Cortese is not entitled to DIB because although his impairments limit his functional capacity and ability to continue his past work, they are not sufficiently severe under 20 C.F.R. § 404.1520(d), Cortese could continue to perform light work, and Cortese could adjust to other work. (Doc. 8-2, at 13-26). In his report, Judge Carlson considered the complete record before the ALJ and determined that the Court should not overturn the ALJ's finding because there was "substantial evidence in the record" supporting the ALJ's decision. (Doc. 17, at 25-46). Cortese objects to the report because, according to Cortese, Judge Carlson did not sufficiently address the ALJ's failure to discuss and consider

evidence related to the side effects Cortese experienced due to medication he took for his impairments, such as Prednisone and psychotropic medication. (Doc. 18, at 2).

The role of courts in reviewing an ALJ's decision is not to determine whether the ALJ made the correct decision, but rather, to determine whether there is "substantial evidence" supporting the decision. *See Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 555 (1988)); *see also Johnson*, 529 F.3d at 200. "A court may not weigh the evidence or substitute its own findings for the Commissioner's." *Michael Edward Davern v. Comm'r of Soc. Sec.*, 660 F. App'x 169, 174 (3d Cir. 2016). The Court may not overturn the ALJ and Commissioner's decision simply because the Court would have interpreted evidence differently or came to a different factual conclusion. *See Gaddis v. Comm'r of Soc. Sec.*, 417 F. App'x 106, 107 n.3 (3d Cir. 2011) (nonprecedential) (stating "courts are bound by [the Commissioner and ALJ's] findings even if they would have decided the factual inquiry differently"); *see also Mease v. Berryhill*, No. CV 17-2327, 2018 WL 6521830, at *1 (E.D. Pa. Dec. 12, 2018) (stating the same).

However, while the substantial evidence standard is deferential to the ALJ and the Commissioner's findings, the ALJ does not meet the standard by relying on a single piece of evidence if they ignore or fail to address conflicting pieces of evidence. *See Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (nonpresidential) (stating "[a] single piece of evidence . . . will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence" (quoting *Kent v. Schweiker*, 710 F.2d

4

110, 114 (3d Cir. 1983)). However, this rule does not mean that an ALJ must discuss every piece of evidence in the record so long as the ALJ considers contrary evidence and makes a reasonable decision to weigh other evidence more heavily. *See Pintal v. Comm'r of Soc. Sec.*, 602 F. App'x 84, 88 (3d Cir. 2015) (nonprecedential) (stating "an ALJ is not required to cite every piece of evidence in the record"); *see also Sean B. v. Comm'r of Soc. Sec.*, No. CV 24-10922, 2025 WL 2848391, at *7 (D.N.J. Oct. 8, 2025) (stating "notwithstanding that [the ALJ] did not cite every single piece of evidence that Plaintiff relies on in his briefing, the ALJ's determination was nonetheless supported by substantial evidence").

Cortese argues that Judge Carlson erred by understating the amount of evidence in the record concerning the side effects Cortese experienced from medication he took, such as Prednisone and medication for his mental health issues. (Doc. 18, at 2). Cortese avers that the ALJ's decision is not based on substantial evidence because the ALJ failed to consider evidence from Cortese's medical records and testimony that Cortese suffered from severe side effects. (Doc. 18, at 2-7). The Court disagrees with Cortese's characterizations of the ALJ's decision and agrees with Judge Carlson's determination that the ALJ's decision was based on substantial evidence. The ALJ extensively discussed Cortese's medical records, considered parts of the records indicating Cortese experienced side effects from his various medications, and concluded that the medical records overall show that Cortese's functionality improved because of his treatments. (Doc. 8-2, at 20-21). The ALJ cited various parts of Cortese's medical records discussing side effect and noted that at various points Cortese experienced either "minimal side effect" or more major medical conditions that "may be related to the use of a steroid medication." (Doc. 8-2, at 20). The ALJ also discussed medical records showing that Cortese experienced medical issues that "may be related to psychotropic medication."

(Doc. 8-2, at 20-21). While Cortese is correct that certain evidence in the record indicates that he suffered from medication side effects, the ALJ did not simply ignore the fact that Cortese experienced side effects from Prednisone and other medications as Cortese suggests. (Doc. 8-2, at 20-21; Doc. 18, at 12-17). Rather, the ALJ weighed parts of the medical record indicating that Cortese improved overall during treatment along with the evidence such as expert testimony introduced by the government and found that the evidence suggesting Cortese could perform certain work outweighed evidence that he could not function due to his condition or side effects from medication. (Doc. 8-2, at 20-26). The Court cannot reweigh this evidence or overturn the ALJ or Commissioner's decision simply because a reasonable jurist could come to a different conclusion. *See Davern*, 660 F. App'x at 174; *see also Gaddis*, 417 F. App'x at 107 n.3. Accordingly, the Court agrees with Judge Carlson that the ALJ and the Commissioner's decision was supported by substantial evidence and the Court will **ADOPT** the report as the opinion of the court. (Doc. 17, at 25-45).

### III. CONCLUSION

The Court agrees with the report's sound reasoning and discerns no error of law. Accordingly, the report (Doc. 17) is **ADOPTED IN ITS ENTIRETY** as the opinion of the Court. The decision of the Commissioner is **AFFIRMED**, and the Clerk of Court is directed to enter judgment in the Commissioner's favor and **CLOSE** this case.

An appropriate Order follows.

**BY THE COURT:**

**Dated: March 2, 2026**              *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**

6